UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD VANWHY, : | |
| Plaintiff : | |
| v. : | CIVIL ACTION NO. 3:13-02327 |
| CAROLYN W. COLVIN, ACTING : COMMISSIONER OF SOCIAL SECURITY, : | (JUDGE MANNION) |
| Defendant : | |

**MEMORANDUM**

**Introduction**

Plaintiff Donald Vanwhy has filed this action pursuant to 42 U.S.C. §405(g) seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Vanwhy's claim for social security disability insurance benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. Vanwhy met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 27.[1]

Vanwhy protectively filed his application for social security disability insurance benefits on February 23, 2010, claiming that he became disabled on June 30, 2008. Tr. 25, 129. Vanwhy has been diagnosed with numerous impairments, including: degenerative disc disease of the lumbar and cervical

---

[1] References to "Tr._" are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

1

spine, lumbar spinal stenosis, sciatica, obesity, gout, "COPD with tobacco abuse," thrombophlebitis, high blood pressure, bleeding varicosities, dyslipidemia, hypertension, left foot heel spurs, sinus tachycardia, diabetes mellitus, depression, and anxiety. Tr. 28, 411. On September 21, 2010, Vanwhy's application was initially denied by the Bureau of Disability Determination. Tr. 92, 98.

On September 23, 2010, Vanwhy requested a hearing before an administrative law judge ("ALJ"). Tr. 104. The ALJ conducted a hearing on November 15, 2011, where Vanwhy appeared *pro se*. Tr. 47-80. On July 2, 2012, the ALJ issued a decision denying Vanwhy's application. Tr. 25-40. On August 13, 2013, the Appeals Council declined to grant review. Tr. 1. Vanwhy filed a complaint before this Court on September 6, 2013, and this case became ripe for disposition on January 31, 2014, when Vanwhy filed a reply brief. For the reasons set forth below, this case is remanded to the Commissioner for further proceedings.

**Statement of Relevant Facts**

Vanwhy was forty-two years of age at the time of the ALJ's decision. He has a ninth grade education, and is able to read, write, speak, and understand the English language. Tr. 129, 161, 163. Vanwhy's past relevant work includes work as a hotel housekeeper, which is classified as light, unskilled work, as a baker, which is classified as heavy, skilled work, and as a molding worker in cosmetics, which is classified as light, semi-skilled work. Tr. 74.

### A. Vanwhy's Physical Impairments

Vanwhy's medical history dates back to at least 1999, with complaints of gout, diabetes, and leg pain occurring regularly prior to Vanwhy's alleged onset date. Tr. 267, 269-70, 307, 311, 312. Complaints of foot pain due to gout continued into the relevant period, with three visits to the emergency room occurring during 2009 because of gout. Tr. 257-61, 265, 294. On August 11, 2009, Vanwhy stated that he had been "laid off from work temporarily" due to the pain in his feet. Tr. 294. Vanwhy continued to experience gout flare-ups throughout the relevant period, and presented to the emergency room for gout-related pain twice in 2011. Tr. 357-60, 523-28.

On April 5, 2010, Vanwhy complained to his physician that he had "pulled something in [his] back" and was in a great deal of pain. Tr. 291. Vanwhy requested a prescription for the pain, but reported that he was unable to visit a doctor or the emergency room because he did not have medical coverage. Id. On January 5, 2011, Vanwhy presented to the Pocono Medical Center emergency room complaining of low back pain radiating bilaterally to his lower extremities. Tr. 531-36. Vanwhy stated that he had been lifting a television set and felt something "pull" in his back. Tr. 531. Vanwhy had "pain on ROM" in his back and paraspinal tenderness, but had a full range of motion in his neck without tenderness. Tr. 532, 534.

On April 3, 2011, Vanwhy was diagnosed with sciatica[2] and prescribed Percocet to alleviate his back pain. Tr. 347. On July 6, 2011, Vanwhy returned to the emergency room complaining of low back pain. Tr. 504.

---

3 Sciatica is caused by irritation of the sciatic nerve or its branches. The irritation can be due to a herniated disk in the spine, swelling and inflammation in the muscles surrounding the sciatic nerve, or direct injury to the nerve itself." Tr. 347.

Vanwhy stated that this pain reached a seven on a scale from one to ten, and radiated down the left leg. Tr. 505. Vanwhy denied weakness in his lower extremities or neck; he was "ambulatory with a steady gait,"[3] and was diagnosed with sciatica. Tr. 504-05.

Vanwhy returned to the emergency room on July 18, 2011, again complaining of low back pain radiating down the left leg. Tr. 498-99. Vanwhy was able to "bear weight," but had only a partial range of motion and moderate strength in his left lower extremity. Id. He had mild tenderness in his lower back, and a straight leg test was positive on the left side. Tr. 499. Physicians diagnosed Vanwhy with sciatica. Tr. 498. Vanwhy told the medical staff that he had no medical insurance, and therefore would be "unable to follow-up." Id. On July 25, 2011, Vanwhy returned to the emergency room, complaining of ongoing back pain, and stating that he had run out of pain medication. Tr. 492. Vanwhy had paraspinal tenderness and was again diagnosed with sciatica. Tr. 492, 495.

On August 4, 2011, Vanwhy injured his hip during a fall in the shower; however, he was able to ambulate and bear weight normally. Tr. 483-84. The medical records state that Vanwhy denied back pain, but later reveal that Vanwhy complained of a continuous, non-radiating pain in his back. Id. X-rays revealed no evidence of serious injury to Vanwhy's hip. Tr. 490. On September 4, 2011, Vanwhy presented to the emergency room complaining of back pain radiating down both legs; he rated the pain as a seven out of

---

4 The Pocono Medical Center emergency room records indicate at every visit that Vanwhy was ambulatory with a steady gait. Tr. 353, 358, 362, 371, 420, 425, 431, 435, 447, 457, 484, 493, 499, 520, 524. However, Vanwhy denied this, and stated that every time he presented to the emergency room, he could "barely move or even walk, [and was] unable to even stand up straight." Tr. 201.

4

ten. Tr. 353.

Vanwhy returned to the emergency room on September 24 and 27, 2011, complaining of a low back pain that reached a ten out of ten pain level, this pain radiated into the left leg. Tr. 361, 365-68. Vanwhy was tender at the lower back, but denied any extremity weakness or neck pain. Tr. 362. On October 22, 2011,[4] Vanwhy complained of low back pain caused by moving furniture. Tr. 446. Vanwhy was able to ambulate slowly, and denied extremity weakness. Tr. 447. He had tenderness to palpation and the lumbar and paraspinal regions, and demonstrated "increased pain with lifting right leg [consistent with a] Herniated disc." Tr. 448.

On October 26, 2011, Vanwhy presented to Theodore Kowalyshyn, M.D. for an initial intake evaluation. Tr. 384. Vanwhy complained of low back pain traveling down the leg, present since 2005, that had worsened since its onset. Id. Vanwhy stated that he was unemployed due to his back problems. Id. He stated that he had only seen a chiropractor for treatment, and stated that Percocet was the only drug to provide any relief. Id. Dr. Kowalyshyn noted varicose veins on Vanwhy's right leg and noted positive straight leg tests bilaterally at seventy degrees. Id. Dr. Kowalyshyn diagnosed Vanwhy with low back pain, gout, hypertension, hyperglycemia, and gastroesophageal reflux disease. Id. After this examination, Dr. Kowalyshyn opined that Vanwhy was temporarily disabled. The disability had begun in 2009, and was expected to continue until October 30, 2012. Tr. 350. Dr. Kowalyshyn stated that this disability was caused by chronic back pain, gout, and high blood pressure. Id.

---

[6] Vanwhy presented to the emergency room on October 7, 2011 with a primary complaint of a toothache. Tr. 456. At this visit, the emergency room staff also diagnosed Vanwhy with "acute on chronic back pain." Id.

5

On November 9, 2011, Vanwhy presented to the emergency room complaining of low back pain that radiated into the hip and left leg. Tr. 519-20. Vanwhy was ambulatory, but with increased pain. Tr. 519. Despite presenting with complaints of back pain, the medical records state that Vanwhy had no back pain and no tenderness to palpation. Tr. 520-21.

Vanwhy returned to Dr. Kowalyshyn for three follow-up appointments in late 2011. Tr. 386-91. On November 18, 2011, Vanwhy complained that his back pain persisted, and Dr. Kowalyshyn ordered an MRI of Vanwhy's lumbar spine. Tr. 386. On December 2, 2011, Dr. Kowalyshyn noted that Vanwhy's "chronic [back] pain [was] not well controlled with max doses of Percocet" and therefore referred Vanwhy to a pain management specialist. Tr. 388. On December 30, 2011, Dr. Kowalyshyn noted that Vanwhy had continued back pain. Tr. 390. On January 27, 2012, Vanwhy presented to Dr. Kowalyshyn for a follow-up appointment relating to chronic back pain. Tr. 382. Vanwhy was scheduled to see a pain management specialist that day, but left prior to his appointment because he "got sick and had to leave." Tr. 201. Id.

On January 8, 2012, Vanwhy presented to the emergency room complaining of back pain radiating down his left leg. Tr. 435. The range of motion in his back was limited by pain, and he had tenderness at the paraspinal region of the left lower back. Tr. 437.

On February 22, 2012, MRI scans were performed on Vanwhy's cervical and lumbar spine. Tr. 409, 411. The MRI of Vanwhy's cervical spine showed disc desiccation at the C6-7 level with a "moderate broad central herniation . . . approaching the cervical cord" accompanied by bilateral narrowing of the neural foramina. Tr. 409. At the C5-6 level, there was a broad herniating across the disc space resulting in a narrowing of "the neural

foramina bilaterally" without cord impingement. Id. The MRI also revealed disc desiccation at the C7-T1 level. Id.

The MRI of Vanwhy's lumbar spine revealed disc desiccation at the L5-S1 level with mild disc narrowing, along with a moderate central herniating. Tr. 411. There was disc desiccation at the L4-5 level, accompanied by a central herniating with "thecal sac compression and [moderate] secondary canal stenosis." Id. At the L3-4 level, there was disc desiccation with a "prominent central herniating" impinging on the thecal sac. Id. The MRI also revealed facet hypertrophy.[5] Id.

On February 27, 2012, Vanwhy presented to the emergency room with low back pain after moving a bed; this pain radiated to the left leg. Tr. 424. Vanwhy had tenderness in the lower back, but neck and extremity exams were normal. Tr. 426. On April 1, 2012, Vanwhy returned to the emergency room complaining of low back pain radiating into the left leg; he rated the pain as a seven out to ten. Id. Vanwhy had tenderness in his lower back, but a lower extremity exam was normal. Tr. 421.

### B.     Residual Functional Capacity Assessment

On July 26, 2010, Sethuraman Muthiah, M.D. examined Vanwhy and completed a residual functional capacity assessment. Tr. 316-23. At this appointment, Vanwhy stated that his primary medical complaint was mid-to-

---

9 "Facet hypertrophy is an enlargement of one or more fact joints. These joints connect the spinal vertebrae to facilitate flexibility and motion . . . facet hypertrophy can cause the joints to become enlarged to the point that they exert pressure on the spinal nerves." Michael Perry, M.D., Laser Spine Institute, Facet Hypertrophy, *available at* http://www.laserspineinstitute.com/back_problems/facet_disease/facet_hypertrophy/ (last visited September 8, 2014).

low back pain, accompanied by burning and tingling in both lower extremities. Tr. 320. Vanwhy also stated that he grew short of breath "on minimal exertion." Id. Dr. Muthiah observed that Vanwhy was obese, and noted that a few "scattered rhonchi [were] heard in [Vanwhy's] lungs." Id. Additionally, on examination Vanwhy had "absent ankle jerks bilaterally," finely dilated veins in both lower extremities, and some minimal swelling in the neck. Id. Dr. Muthiah also noted paraspinal spasms in the lumbar and sacral regions. Tr. 322.

While Vanwhy had a normal gait, he also had positive straight leg tests bilaterally at forty-five degrees in both the seated and supine positions. Id. Vanwhy had a reduced range of motion in the shoulders and knees, and a mildly reduced range of motion in his cervical spine. Tr. 317. In the lumbar spine, Vanwhy's range of motion was reduced to fifty degrees in the flexion extension and fifteen degree bilaterally in the lateral extension. Id.

Dr. Muthiah opined that Vanwhy was capable of frequently lifting thirty pounds, and was capable of frequently carrying twenty pounds. Tr. 318. Dr. Muthiah believed that Vanwhy could only stand and walk for one to two hours during an eight-hour workday, and could only sit for three hours during a workday. Id. Vanwhy could occasionally bend and kneel, but was restricted from heights, moving machinery, and temperature extremes. Tr. 319.

### C.   The Administrative Hearing

On November 15, 2011, Vanwhy's administrative hearing was conducted. Tr. 47-80. At that hearing, Vanwhy testified that he occasionally drove to the grocery store, but was unable to drive long distances due to the pain in his back, legs, and arms. Tr. 57-58. Vanwhy also occasionally used

his computer to check e-mail and read the news in the mornings; he did not have any hobbies, although he did see family and friends. Tr. 59-60. Vanwhy did not perform many chores around the house because his friend did "mostly everything" for him. Tr. 72.

Vanwhy testified that he had stopped working due primarily to pain in his back and legs; he also experienced numbness down the outside of his thighs, and pain below his knees. Tr. 61-63. Vanwhy told the ALJ that he was in constant pain all day, regardless of whether he was sitting or standing; to relieve the pain he had "lay down most of the time." Tr. 67. Vanwhy believed that he was able to sit for ten to fifteen minutes at a time and stand for a "couple [of] minutes" at a time. Tr. 68. Despite the pain, Vanwhy had not been able to see a specialist because he did not have medical insurance. Tr. 67-68.

Vanwhy had tried to work despite of the pain, but had to continually cut back on his work each year. Tr. 64. In 2011, he attempted working approximately two hours per day at a laundry operation, but his employment was terminated due to his medical issues. Tr. 66. Later, Vanwhy attempted working part-time as a greeter at K-Mart, but "could not handle" the job because he was "in too much pain," despite having the option to sit or stand at will. Tr. 66-67.

After Vanwhy testified, Francis Terry, an impartial vocational expert, was called to give testimony. Tr. 73. The ALJ asked Ms. Terry to assume a hypothetical individual with Vanwhy's age, education, and work experience that could perform sedentary work[6] but must be afforded an option to sit or

---

11 Sedentary Work is defined by the regulations of the Social Security Administration as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

stand at will. Tr. 76. The individual could only occasionally balance, stoop, and climb ramps or stairs, but could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. Id. The individual must avoid pushing or pulling with the lower extremities and must avoid concentrated, prolonged exposure to "fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, and extreme dampness and humidity." Id. Furthermore, he could not be exposed to hazards such as dangerous machinery or unprotected heights. Id.

Under this hypothetical, Ms. Terry testified that the individual would be unable to perform Vanwhy's past relevant work. Id. However, the individual would be capable of performing three jobs that exist in significant numbers in the regional economy: a telemarketer, a customer service representative, or an information clerk. Tr. 76-77.

**Discussion**

In an action under 42 U.S.C. §405(g) to review the Commissioner's decision denying a plaintiff's claim for disability benefits, the district court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence has

---

tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §416.967.

been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. § 404.1520; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed

impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §404.1520. The initial burden to prove disability and inability to engage in past relevant work rests on the claimant; if the claimant meets this burden, the burden then shifts to the Commissioner to show that a job or jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason, 994 F.2d at 1064.

### A. Development of the Record

Vanwhy argues, *inter alia*, that the ALJ failed to fully and fairly develop the record, particularly in light of the fact that Vanwhy appeared *pro se* at the administrative hearing. Specifically, Vanwhy argues that the ALJ should have obtained a residual functional capacity assessment from Vanwhy's treating physician. The Commissioner did not offer a response on this point.

While the burden generally rests on a claimant to prove disability, the United States Court of Appeals for the Third Circuit "has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record[.]" Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir. 1979). The requirement that an ALJ fully develop the record is "most critical in situations in which social security claimants are not represented by counsel[.]" Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). Thus, "[a]n ALJ owes a duty to a pro se claimant to help him or her develop the administrative record." Reefer v. Barnhart, 326 F.3d 376, 390 (3d Cir. 2003).

The ALJ's duty to further develop the record is generally triggered where there are evidentiary gaps, or when a conflict or ambiguity exists within

the medical records that must be resolved. e.g., Freeman v. Comm'r of Soc. Sec., 3:13-cv-00065, 2014 WL 1293865, at *12 (M.D. Pa. Mar. 31, 2014) (citations omitted). An ALJ must order a consultative examination where "such an examination is necessary to enable the ALJ to make the disability decision." Thompson v. Halter, 45 F.App'x 146, 149 (3d Cir. 2002) (citing 20 C.F.R. §§ 404.1517, 416.917; Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977)).

In this instance, there was insufficient evidence to enable the ALJ to make a disability determination, and therefore the ALJ erred in not further developing the record. One consultative examination was performed by Dr. Muthiah on July 26, 2010; this examination resulted in the only residual functional capacity assessment contained within the administrative record. Tr. 316-23. This residual functional capacity assessment effectively rendered Vanwhy disabled by limiting him to standing, walking, and sitting for a maximum of five hours during an eight hour workday. Tr. 318. Additionally, Vanwhy's treating physician, Dr. Kowalyshyn, completed a form on October 26, 2011 indicating that Vanwhy had been disabled for a period that exceeded one year. Tr. 350.

The ALJ rejected both opinions, and decided that Vanwhy was capable of sitting, standing, or walking for an entire workday, so long as he was allowed the option to sit or stand at will. Tr. 31, 37. The ALJ rejected Dr. Kowalyshyn's opinion because it contained "bare bones information," was "not well-supported by the medical evidence of record," and was completed at Vanwhy's first appointment with Dr. Kowalyshyn. Tr. 37. The ALJ gave "some weight" to Dr. Muthiah's opinion, but rejected limitations in Vanwhy's ability to sit, stand, or walk. Id. The ALJ reasoned that Dr. Muthiah's

conclusion in that respect was not supported by "his own exam findings and the objective medical evidence[.]" Id.

The ALJ's decision to reject these opinions left the ALJ without any medical opinion supporting her decision that Vanwhy could sit, stand, and walk in combination for an entire eight hour workday. The lack of any medical opinion substantiating the ALJ's conclusion was particularly troublesome in light of the MRI results from February 22, 2012. Tr. 409, 411. These MRI results revealed a disc herniating at two different levels in the cervical spine and three levels in the lumbar spine. Id. The herniating at the lumbar spine resulted in moderate spinal stenosis, a condition that substantiated Vanwhy's complaints of radiating pain in his lower back. Tr. 411. Without any medical opinion as to the functional limitations caused by these impairments, the ALJ was forced to rely upon her own lay intuition in determining Vanwhy's functional limitations.

Regardless of the validity of the ALJ's decision to reject the opinions of Dr. Kowalyshyn and Dr. Muthiah, the decision to reject both opinions triggered an obligation to further develop the record. This Court has repeatedly stated that, absent rare circumstances, an ALJ may not reach a residual functional capacity determination without the benefit of a supporting assessment from a physician. See, e.g., Bloomer v. Colvin, 3:13-cv-00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014); Maellaro v. Colvin, 3:12–cv–01560, 2014 WL 2770717, at * 11 (M.D. Pa. June 18, 2014); Arnold v. Colvin, 3:12–cv–02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014); Gormont v. Astrue, 3:11–cv–02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); Troshak v. Astrue, 4:11–cv–00872, 2012 WL 4472024, at *7 (M.D. Pa. Sept. 26, 2012).

Consequently, without any medical opinion supporting the ALJ's residual functional capacity determination, the available medical evidence was insufficient "to enable the ALJ to make [a] disability determination." Thompson, 45 F.App'x at 149. As a result, the ALJ was required to either: (1) request a residual functional capacity assessment from Vanwhy's treating physician; (2) order a consultative examination, or; (3) order a state agency physician review of the medical evidence in light of newly submitted evidence. The ALJ chose none of the three options, and instead relied upon her own lay intuition. This was clear error, and on remand the ALJ must elicit further medical opinion regarding Vanwhy's residual functional capacity.[7]

**Conclusion**

A review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Pursuant to 42 U.S.C. §405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order will be entered.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

Dated: September 30, 2014
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2327-01.wpd

---

[12] Vanwhy has presented two additional arguments as to why the ALJ's decision was flawed; because remand is required based on the ALJ's failure to develop the record, the Court need not address the two additional arguments.